**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **LORETHA ANN NELSON,** | * | |
| | * | |
| **Plaintiff,** | * | **CIVIL ACTION NO. 13-00294-B** |
| | * | |
| **vs.** | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Commissioner of Social** | * | |
| **Security,** | * | |
| | * | |
| **Defendant.** | * | |

## ORDER

Plaintiff Loretha Ann Nelson (hereinafter "Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On April 25, 2014, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 20). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

# I.  **Procedural History**

Plaintiff protectively filed an application for a period of disability, disability insurance benefits, and supplemental security income on February 22, 2010. (Tr. at 67, 194). Plaintiff alleged that she had been disabled since January 1, 2009, due to back problems, right lung problems, knee problems, and right hand problems. (Id. at 67, 198, 228). Plaintiff subsequently argued before the Agency that she also was disabled as a result of post traumatic stress disorder.[1] (Id. at 228). Plaintiff's applications were denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge Joseph F. Dent (hereinafter "ALJ") on July 22, 2011. (Id. at 56). Plaintiff attended the hearing with her counsel and provided testimony related to her claims. (Id. at 66). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 91). On July 22, 2011, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 56). The Appeals Council denied Plaintiff's request for review on April 17, 2013. (Id. at 1). The parties waived oral argument (Doc. 22) and agree that this case is now

---

[1] Plaintiff bases her claim before this Court solely on her psychological impairments, *i.e.*, post traumatic stress disorder and adjustment disorder with depressed mood. Plaintiff has expressly abandoned any argument related to her physical impairments. (Doc. 14 at 3). Thus, the Court's discussion herein is limited to Plaintiff's psychological impairments.

ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issue on Appeal

> Whether substantial evidence supports the ALJ's RFC assessment?

## III. Factual Background

Plaintiff was born on October 28, 1966, and was forty-four years of age at the time of her administrative hearing on June 21, 2011. (Tr. 61, 67). Plaintiff testified that she graduated from high school and attended one year of college. (Id. at 67, 199). In her Work History Report provided to the Agency, Plaintiff stated that she worked as a machine operator and warehouse worker at Bush Hog for approximately twenty-two years and served in the National Guard for twenty-one years. (Id. at 200, 218). Plaintiff stated in her Function Report that she takes care of her daughter, which includes getting her ready for school, escorting her to and from the bus stop, ironing her clothes, and combing her hair. (Id. at 76, 209-10, 212). In addition, Plaintiff drives, shops, cooks, performs household chores such as laundry and washing dishes, and handles her own finances. (Id. at 211-12). Her interests include sports[2] and spending time on her computer. (Id. at 82, 213). In addition,

---

[2] Plaintiff stated that she can no longer play basketball and softball because she "can't run like [she] used to and [she] give[s] out of breath fast."  (Tr. 213).

she visits her mother and goes to church every Sunday. (Id. at 79, 213).

Plaintiff testified at her hearing that she stopped working in March 2009 when she was laid off as part of a personnel reduction at her company. (Id. 68). She stated that she had "a little mental problem" during the time that she worked, *i.e.*, noise "g[o]t on [her] nerves," and she liked to work by herself.[3] (Id. at 68-69, 73). According to Plaintiff, she has post traumatic stress disorder from serving in Desert Storm. (Id. at 83). Plaintiff testified that her medications include several pain medications, a muscle relaxer, anxiety medication, and an anti-depressant, some of which make her drowsy. (Id. at 74, 76).

## IV.  Analysis

### A.  Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct

---

[3] Plaintiff stated in her Function Report dated March 15, 2010, that "most of the time [she] want[s] to be alone" and "[does not] go out as much as [she] used to." (Tr. 214). However, she is able to finish what she starts, and she can follow written instructions. (Id.).

legal standards were applied.[4]  <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  <u>Chester v. Bowen</u>, 792 F. 2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**B.  <u>Discussion</u>**

An individual who applies for Social Security disability benefits must prove his or her disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to

---

[4] This Court's review of the Commissioner's application of legal principles is plenary. <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987).

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[5] 20 C.F.R. §§ 404.1520, 416.920.

---

[5] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since January 1, 2009, the alleged onset date, and that she has the severe impairments of post traumatic stress disorder and adjustment disorder with depressed mood.[6] (Tr. 34-35). The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 35).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform sedentary work, limited to "simple, routine, and repetitive one-to-three step tasks in a low stress job, defined as having only occasional decision making, occasional changes in the work setting, occasional interaction with coworkers, and no interaction with the public."[7] (Id. at 38). The ALJ also determined that while Plaintiff's medically determinable

_____

[6] While not at issue on appeal, the ALJ also found that Plaintiff has the severe physical impairments of degenerative disc disease of the cervical spine, degenerative joint disease of the right shoulder and knees, mild osteoarthritis of the knees, recurring sinusitis and related airway disease, status post injury and surgical correction of right finger, status post hemidiaphragm paralysis with corrective surgery, and obesity. (Tr. 34-35).

[7] While not at issue on appeal, the ALJ also assigned several physical restrictions to Plaintiff's RFC for sedentary work. (Tr. 38).

impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not credible to the extent that they were inconsistent with the RFC. (Id. at 54).

Given Plaintiff's RFC, the ALJ found that Plaintiff is incapable of performing her past work as a machine operator, warehouse worker, or stock clerk. (Id. at 55). However, utilizing the testimony of a VE, the ALJ concluded that considering Plaintiff's residual functional capacity for a range of sedentary work, as well as her age, education and work experience, there are other jobs existing in the national economy that Plaintiff is able to perform, such as "dowel inspector" and "cuff folder," both of which are classified as sedentary and unskilled. (Id. at 55-56). Thus, the ALJ concluded that Plaintiff is not disabled. (Id.).

Pertinent to this appeal are the findings made by the ALJ which informed his decision that Plaintiff is not disabled. In determining that Plaintiff did not meet any Listing, the ALJ made the following relevant findings:

> **The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d) and 416.926). . . .**

The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every four months, each lasting for at least 2 weeks. The undersigned notes that the claimant's treating psychiatrist [Dr. Maria Tabino] authored an opinion to the contrary (Exhibit 12F). However, that opinion was in stark contrast with the medical and objective evidence of record, including [Dr. Tabino's] own treatment records. The inconsistency is discussed below along with all relevant treatment evidence. For purposes here, her opinion warranted and received little weight.

Accordingly, the undersigned finds that in activities of daily living, the claimant has mild restriction. She is capable of initiating and participating in activities including cleaning, shopping, driving, and maintaining a residence for herself and her daughter, independent of supervision or direction. While her impairments may interfere with complex activities, her performance of a simple routine is appropriate, effective, and sustainable.

In social functioning, the claimant has moderate difficulties. The claimant is able

to initiate social contacts, communicate clearly, demonstrate cooperative behaviors, and participate in group activities. Nonetheless, the claimant insists that she has an inherent inability to be around others. Her treating psychiatrist [Dr. Tabino] as well as the State agency psychologist [Dr. Joanna Koulianos, Ph.D.] concurs. As the State agency psychologist found limitation and provided opinion as to the modifications that are necessary for her to perform simple mental work activity, the undersigned accepts her opinion.

With regard to concentration, persistence, or pace, the claimant has moderate difficulties. She can sustain focused attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in routine and repetitive work settings. However, the evidence of record reveals that she has one year of college and a nurse assistant certificate. The undersigned believes that she may be capable of more detailed and complex work activity. There is no evidence of any depreciation in cognitive or intellectual capacity such that the claimant would function in a diminished activity after reaching the stated measures. Nonetheless, the State agency psychologist concluded that the claimant should be limited to routine and repetitive work. As her findings are more favorable to the claimant, and allow for work activity, the undersigned saw no reason to ignore her assessment.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. The record does not indicate any loss of adaptive functioning.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated"

episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria because there is no establishment of repeated episodes of decompensation, propensity toward decompensation or need for a highly supportive living arrangement. . . .

(Id. at 36-38).

In addition, in assessing the Plaintiff's RFC, the ALJ made the following relevant findings:

The claimant alleges that she suffers with back, lung, knee, and right hand problems. . . . (Exhibit 3E, pg. 2). Of most significance, the claimant did not report a mental impairment or mental limitations. (Id.). She further advised that her condition caused changes as early as January 2007; however, she did not mention any mental impairment or changes in her mental capacity. . . .

When asked if she was receiving any care for a mental impairment, she reported that she was not (Id. at 6). However, in her medication list, she did advise that she was taking Clonazepam for anxiety and Paroxetine hydrochloride for nerves (Id. at 5). Based on her allegations, the conditions for which the medications were prescribed were stable.

The claimant also completed a functional report approximately one month after she submitted her application. At that time, per her report, she lived alone with a daughter. She reported that she engages in her own daily personal hygiene. She also prepares her daughter for her school day,

takes her to the bus stop, and picks her up at the end of the day (Exhibit 4E, pg. 1). She advised that her mother assists with her daughter. However, she did not mention any mental limitation during such periods (Id.). Her report focused solely on physical limitation, to that point in the report.

By way of example, in addressing her own personal care she listed some limitation stemming from pain in her legs and back. (Id.). She gave no indication that she received or required any mental assistance in caring for her daughter or herself. Her mom does remind her to take her medications (Id. at 3).

She prepares food, but primarily sandwiches. However, she allegedly only cooks on occasion. Her mom cooks daily. She does do ironing, laundry, and dishes. She engages in such activity once a week. In reference to any need for encouragement, she advised that sometimes she has to be told to overlook her pain (Id. at 3).

She goes out alone. She drives and rides as well as walks when she travels. She shops in stores for food and clothes. Allegedly, she shops only 30 minutes once a month. Her impairments have not affected her ability to manage funds (Id. at 4-5). Her current hobbies are limited to watching TV. She no longer plays sports. She cannot run because she experiences shortness of breath (Id. at 5). As to social activities, she advised that she does spend time with others. She attends church every Sunday, and visits with her mother. She needs someone to accompany her (Id.).

However, in response to getting along with others she wrote "[s]ometime[s] when I [am] around and we watch television I like [quiet] and they don't and most of the time I want to be alone" (Id. at 6). She does not go out as much as in the past (Id.).

The form allows her to select from a list of items, if she believes her impairments cause limitation in a particular item.  . . .  As to mental activities, she also listed concentration, understanding, and getting along with others (Id. at 6).  She reported *no limitation in memory, completing tasks, following instructions, or using her hands* (Id.) (all emphasis added).

However, she added that she does not know how long she can pay attention.  She finishes what she starts.  Although she did not annotate the prompt for following instructions, she added that her ability to follow written instructions is ok, but her ability to follow spoken instructions is not very good (Id.).  She can get along with authority figures so long as authority is dispensed in an orderly manner.  Her ability to hand[le] change in routine is ok.  Her ability to handle stress is not good (Id. at 7).

The last question on the form specifically advises the claimant to note any unusual behaviors or fears.  The claimant reported "I'm angry a lot" (Id.).  She elected to further explain this entry.  She wrote: [w]hen *I am in pain* it['s] hard to understand and it make[s] me feel like I want to be alone and cause[s] me to get angry with people (Id. at 8) (emphasis added).  She reported no fear consistent with posttraumatic stress disorder, and once again attributed her concerns as secondary to or an element of her physical impairments.

Lastly, as to the functional report, . . . [t]he undersigned notes that she completed the report without any reported assistance.

. . . [T]he report provides no indication for any significant mental impairment or limitation.  The report clearly suggests

13

that even the minimal mental limitation she suggests is closely related to her physical impairments.

As noted, the claimant alleged onset in January 2009. The fact that she continued to work thereafter is explored above. What is important here is that the medical evidence consistent with that date lends no weight to her allegation. The undersigned notes that although she alleged onset in January 2009, the claimant did not submit the application until February 2010. The evidence discussed below shows that there was no impetus to submit a claim as the claimant was financially secure and did not believe she was disabled.

The claimant testified that she is medically retired from the Army National Guard and retired from her civilian employer only after they laid her off due to closure, and not because of any health issue. The claimant was receiving retirement pay from both entities. . . .

On December 19, 2008, she met with a psychiatrist at the VA facility [Dr. Tabino]. She advised that she was "okay" (Exhibit 6F, pg. 256). Thereafter, she and the psychiatrist discussed insurance, problems with billing, her choice and desire for a specific psychiatrist, and her medications. (Id.). The notes indicate that the claimant was more than aware of specific details during the conversation and in fact, seems to have led the discussion. (Id.).

[Dr. Tabino] noted general observations. . . . She was "able to verbalize her complaints, explained the billing that she received from Blue Cross form the private sector and her laboratory work" (Id.) (emphasis added). Insight and judgment were adequate. Memory and cognition were intact. (Id.) (emphasis added).

Without any additional observations, etc., [Dr. Tabino] assessed adjustment disorder with depressed mood chronic and assigned a Global Assessment of Functioning (GAF) of 50. (Id. at 257). Nonetheless, in the summary [Dr. Tabino] noted that she did not verbalize any depression at any time, but complained regarding her copayment, lack of receipt of medication, and billing. (Id.). There was no mention of PTSD.

[Dr. Tabino] mentioned the precise details of her conversation at least three times. Despite diagnosis and treatment, the encounter, as noted, provided very little indication for severe impairment, as defined by the Agency. The claimant advised that she was okay. From that point, the evidence reveals a well-aware patient actively, if not astutely, involved in her medical care. Therefore, the undersigned finds that there is no evidence to support the GAF of 50. . . .

Even a cursory review of the objective report provides no support for a GAF of 50. There is no evidence of a serious impairment in social functioning and the clamant was *gainfully employed* at that time, without evidence or report of any mental impairment preventing or limiting her employment. . . .

The claimant did return on March 5, 2009 – two months after alleged onset . . . . She made no mention of any mental problems, and did not exhibit any. . . .

The claimant also underwent screening for depression. The results were negative. (Id.). . . .

Five days later, she underwent a VA Compensation and Pension examination. She was assessed regarding post-traumatic stress disorder (PTSD) as well as symptoms for knee

and back pain. The undersigned notes that there was no mention of any PTSD during the last visit. The claimant was calm, and rather authoritative, as gleaned from the notes above. . . . (Id. at 230).

She reported that she enjoys a close relationship with her daughter; however, it is often strained by her mood symptoms. (Id.). There is no previous report of this issue, nor is there any such allegation in her function report. Nonetheless, she enjoys one to two close friendships beyond the family. She has no history for violence. She enjoys solving puzzles and spending time on the computer. (Id.).

Mental status evaluation revealed she was clean and neatly groomed. Psychomotor activity was restless. Speech was hesitant. Attitude was cooperative. Affect was constricted. Mood was anxious, agitated, and dysphoric. She was easily distracted. The undersigned cannot help but note that none of these factors were noted during her visit with the nurse, just five days earlier, nor during the psychiatrist visit noted above. Of note is that those visits were not geared toward a compensation examination that could result in a finding of some level of VA disability and a corresponding monthly disability payment.

In any event, *cognitive testing was unremarkable*. (Id.) (emphasis added). *She was well oriented. Thought process was unremarkable. Thought content was unremarkable.* There were no delusions. *Judgment was unremarkable. Intelligence was average.* There were no hallucinations. She interpreted proverbs appropriately. She did not report an obsessive/ritualistic behavior. *She does not experience panic attacks*. (Id. at 232) (emphasis added). She is neither homicidal nor suicidal. *She reported no limitation in activities of daily living*. (Id.) (emphasis added).

16

Her remote memory was normal. Recent and immediate memory were mildly impaired. She also reported sleep impairment and as to inappropriate behavior *her brother* refers to her as crazy in regard[] to her exhibited impatience and anger-management related issues (Id. at 232) (emphasis added). The claimant specifically underwent a PTSD assessment.

Per the results of that assessment, it appears that no diagnostic tool other than interview with the claimant relating purely subjective reporting was used to diagnose PTSD (Id. at 233-234). However, part of the evaluation involved a discussion of her current employment. The claimant offered the following:

> [Claimant] was *laid off* from a Bushhog plant in Selma, Alabama, *a week prior to the interview after 22 years of employment*. She reported she does not intend to sign a severance agreement as it stands, so she will not be officially retired. (Id. at 234) (emphasis added).

This statement is significant. First, it shows that despite the claimant's current allegations of disabling PTSD (Id. at 234), the claimant was able to work despite this alleged impairment. Equally as telling, as she later testified, she stopped working for reasons unrelated to her health.

Despite her report that she was laid off and her testimony, she nonetheless advised the doctor that her mental disorder was factor. As noted above, the claimant did not allege any mental impairment in her current allegations. . . .

She visited the mental health clinic on April 2009. She advised the therapist "I am

doing better. . . . I got my medicine. . . I just came from physical therapy. . . (Id. at 215) (emphasis added). She then added that she "went to the zoo with her daughter" (Id.) (emphasis added). This information clearly shoes that the claimant was able to engage in routine social activities. . . . She did not mention needing any breaks secondary to being around the other guests. . . . The notion that she cannot tolerate being around others is equally not likely.

Mental status evaluations and depression screening were unremarkable. (Id.). The claimant visited VA mental health personnel again on April 21, 2009. She actually discussed her employment situation. She advised personnel as follows:

> with regards to her job, *she is just waiting for her time*. She cannot tolerate being around a lot of people at work. *Also indicated that she has retirement. She is still under unemployment.* . . . She has been at work more than 22 years and *she was offered a package but she states she does not accept that because there are certain restrictions in that*. . . . *She is not concerned at this time about not being able to work.* . . . *She is choosing what kind of work she has.* . . . She prefers to have a job where she could be working alone *although she could be with other people* but she has to be alone in her work station. . . . (Id. at 211) (emphasis added).

These statements are critical. The claimant knew she was not disabled. As even the therapist would later point out (in the treatment notes), she clearly had savings and was not worried about her employment status. More importantly for purposes here,

she knew she could work and would return to work at some point in the future, at her own choosing. . . .

The claimant visited the psychiatry department on December 7, 2009. Her blood pressure was 140/90. [Dr. Tabino] recommended a change in medications to improve blood pressure control. The claimant declined the recommended changes (Id. at 107). Depression screening revealed moderate depression (Id. at 107-108). However, the claimant reported "I'm alright" (Id. at 104). She further advised that she is not working because "there are no jobs available" (Id.). . . .

The objective elements of the mental status evaluation were unremarkable. Nonetheless, the claimant reported symptoms for PTSD and was so diagnosed. Diagnosis of adjustment disorder with depressed mood was also continued. However, largely consistent with her presentation she was assigned a GAF of 55 (Id. at 104-105). Such a GAF indicates moderate difficulty in social, occupational, or school functioning (DSM-IV-TR, pg. 34). Moderate difficulty or limitation does not preclude all work activity and certainly does not indicate disability. She was simply advised to continue Paxil (Exhibit 6F, pg. 105). . . .

[The claimant] visited the VA psychiatry clinic on April 2, 2010, and for the first time during the period adjudicated herein, the claimant advised that she was not doing ok. However, the evidence suggest[s] that it was not mental health, but more so her financial situation that may have been the primary factor. She advised that she is not working and "*not sure if this is her last check from unemployment*" (Exhibit 7F, pg. 2) (emphasis added). . . .

Nonetheless, she indicated symptoms consistent with her diagnoses. However,

[Dr. Tabino] recognized the significance of the possible loss of unemployment insurance. . . . [Dr. Tabino] assigned a GAF of 55, indicating no more than moderate difficulty in social, occupational, or school functioning. (Id. at 3). In other words, [Dr. Tabino] indicated that the claimant could work, with moderate limitations in mental work activity. . . .

On August 3, 2010, the claimant visited the VA psychiatrist. She advised that she was "about the same. . . she is not working so applied for disability" (Id. at 222). She advised [Dr. Tabino] that her claim was denied and she was appealing. She then vented regarding her life and symptoms of PTSD in general (Id. ). The results of the mental status evaluation remained basically the same as the previous visit. The claimant failed to maintain eye contact and her mood was dysphoric. Beyond that there was little change. She also discussed the recent death of her niece. (Id.). The statement regarding disability is telling and support the undersigned's earlier conclusion that the application was based on her current or future expected need for additional income, and not any physical or mental impairment.

Despite very little change in her mental status, [Dr. Tabino] downgraded her GAF to 45, which indicates serious difficulty in social, occupational, or school activity (Id. at 223). (DSM-IV-TR, pg. 34). However, inconsistent with the assessment, she made no changes in the claimant's medications. . . . The treatment plan . . . was not indicative of a 10-point drop in the claimant's GAF. Lastly, as to this visit, [Dr. Tabino] offered no assistance and made no comment regarding the claimant's application for disability.

Three weeks later, she presented to [Dr. Tabino] with forms for the claim. No care

was sought or given (Id. at 219). Despite the treatment record, carefully summarized above, [Dr. Tabino] completed a form entitled "Proof of Disability" (Exhibit 12F, pg. 1). The form is not a VA, State Agency, or product of this Agency.

The second page of the form contained Listing 12.02 Organic Mental Disorders (Id. at 2). . . . The first requirement . . . was the demonstration of a loss of specific cognitive abilities or affective changes and the medically documented presence of at least one of the listed criteria. (Id.). [Dr. Tabino] annotated memory impairment. (Id.). At no time did [Dr. Tabino] report any difficulty regarding the claimant's memory. As stressed above, the claimant was an active if not equal partner in assessing her activities, history, medications, and treatment. At no time, did [Dr. Tabino] note any cognitive deficiency. . . . She further noted disturbance in mood, and emotional lability. (Id.). However, as carefully noted above, the treatment record is not consistent with this finding. There were mood changes. There was emotional lability. However, the mood changes were contemporary with her fear of losing unemployment insurance and the death of her niece. Emotional lability was likewise related to the same factors. . . . . [Dr. Tabino] further advised that the claimant suffered marked restriction or difficulties in maintaining social functioning, as well as concentration, persistence, and pace. She even advised that there were repeated episodes of deterioration or decompensation. (Id. at 2). The undersigned carefully reviewed the provider's interaction with the claimant. Not only do those interactions not support her assessment, but also the claimant never reported symptoms consistent with this report. . . . [T]here is no evidence of decompensation, whatsoever, in spite of [Dr. Tabino's] determination that there were repeated episodes of such. . . . .

In fact, as detailed above, both parties clearly intended that the claimant was going to return to work. The evidence shows that the claimant did address all activities of daily living independent of direction or supervision. She consciously made the choice not to work, and apart from an isolated work area, she never presented any limitation for mental work activity, until after she submitted her application. That limitation focused generally on her desire not to be around others. There was no indication and there remains no indication of any cognitive depreciation. [Dr. Tabino's] statement – prepared by the representative – was not consistent with the evidence of the treatment she provided, and certainly not the evidence of record in general. Her report warranted and received very little weight. . . .

She returned to [Dr. Tabino] on December 3, 2010. She still provided symptoms for PTSD. She added that she continued to receive unemployment benefits. . . . She mentioned that the loss of her niece continued to depress her. . . . (Id. at 164).

[Dr. Tabino] noted her objective observations. The claimant . . . was *euthymic. Her affect was pleasant. She was relaxed and comfortable during the session. She was talkative.* She still reported an inability to tolerate crowds. Insight and judgment were adequate. Diagnosis remained the same (Id. at 165) (emphasis added).

Despite the obvious improvement from the last encounter, she continued to maintain her GAF at 45 (Id.). The undersigned does not concur. There was nothing objectively different from the periods during which she rated her GAF at 55. Additionally, although erroneous, the GAF of 45 is not consistent with [Dr. Tabino's] medical source statement of five months earlier, indicating that the claimant was so mentally impaired that a

listing was met.

Even more telling, and in conflict with the medical source statement and the GAF of 45, she advised the claimant "[r]eturn in 4 months as she seems to have improved at this time" (Id. at 166) (emphasis added). Despite the medical source statement, she clearly did not believe the claimant, a patient who rejected all offers of group therapy, was disabled such that she needed any counseling other than on an extend 4-month basis. More importantly, the treatment plan shows that the claimant was making great strides and required minimal intervention. (Id.). . . .

On April 4, 2011, . . . [claimant] visited [Dr. Tabino.] She reported that she was "alright" (Id. at 104). Her unemployment had expired and she was living off of her VA disability. She hurts all the time and it is depressing. She allegedly continued to experience nightmares and flashbacks. . . .

[Dr. Tabino] reported her observations. *The claimant was . . . calm and cooperative. She interacted and participated in her treatment. Her mood was euthymic. Affect was pleasant. Speech was productive, coherent and well engaged.* She was still optimistic about life (Id. at 105) (emphasis added). Diagnosis was for PTSD and unemployed at this time. Adjustment disorder with depressive features was no longer part of her diagnoses. Nonetheless, and incredibly, [Dr. Tabino] maintained that the claimant's GAF was 45. She was directed to return in four months. Again, [Dr. Tabino's] actions are grossly inconsistent with her assessments, including her medical source statement. The claimant's improvement was undeniable. The claimant was now on a program requiring intervention only three times a year. The claimant did not suffer any serious or disabling mental impairment.

> The undersigned reviewed the remainder of
> the voluminous VA records and could not find
> any evidence of a disabling impairment. . .
> .

(Tr. at 39-52).  The Court now considers the foregoing in light
of the record in this case and the issue on appeal.

### 1.  Issue

**Whether substantial evidence supports
the ALJ's RFC assessment?**

Plaintiff argues that the ALJ's finding that she retained
the RFC to perform a range of sedentary work, conditioned upon
the work being limited to simple, routine, and repetitive one-
to-three step tasks in a low stress job, only occasional
decision making, occasional changes in the work setting,
occasional interaction with coworkers, and no interaction with
the public (id. at 38), is not supported by substantial
evidence.[8]  Specifically, Plaintiff argues that the ALJ erred in
discrediting the opinions of her treating psychiatrist, Dr.
Maria Tabino, that she is disabled and that, having done so,
there is no medical evidence to support the ALJ's RFC.  (Doc. 14
at 2, 7).  The Commissioner counters that the ALJ properly
discredited the opinions of Dr. Tabino and that the ALJ's RFC
determination is supported by substantial medical evidence in

---

[8] As noted above, Plaintiff does not take issue with the ALJ's RFC
determination related to her physical impairments.  Thus, the
Court limits its discussion to Plaintiff's mental impairments.

the record.

With respect to Plaintiff's argument that the ALJ erred in discrediting the opinion of her treating physician, Dr. Tabino, that she is disabled as a result of her mental impairments, the Court finds, to the contrary, that the ALJ had good cause to discredit Dr. Tabino's opinions set forth in the August 2010 "Proof of Disability" and "Mental Impairment Questionnaire" forms and that the ALJ sufficiently articulated his reasons for doing so. (Tr. 37-50, 1057-58). "It is well-established that the testimony of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary." Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (citations and internal quotations omitted). The ALJ may discount the treating physician's report where it is not accompanied by objective medical evidence, is wholly conclusory, or is contradicted by the physician's own record or other objective medical evidence. Id.; see also Green, 223 Fed. Appx. at 922-23 (ALJ had good cause to devalue a treating physician's opinion where it was inconsistent with the objective medical evidence, as well as the plaintiff's testimony). "When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the: (1) length of the treatment relationship and the frequency of examination; (2) the nature

and extent of the treatment relationship; (3) the medical evidence and explanation supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the pertinent medical issues; and (6) other factors that tend to support or contradict the opinion." Weekley v. Commissioner of Soc. Sec., 486 Fed. Appx. 806, 808 (11th Cir. 2012) (unpublished) (citing 20 C.F.R. § 404.1527(c)). When an ALJ articulates specific reasons for declining to give a treating physician's opinion controlling weight, and the reasons are supported by substantial evidence, there is no reversible error. See Forrester v. Commissioner of Social Sec., 455 Fed. Appx. 899, 902 (11th Cir. 2012) (unpublished) ("We have held that an ALJ does not need to give a treating physician's opinion considerable weight if evidence of the claimant's daily activities contradict the opinion."). Indeed, an ALJ "may reject any medical opinion, if the evidence supports a contrary finding." Id., 455 Fed. Appx. at 901. Although the ALJ must evaluate the treating physician's opinion "in light of the other evidence presented," "the ultimate determination of disability is reserved for the ALJ." Green, 223 Fed. Appx. at 923 (citing 20 C.F.R. §§ 404.1513, 404.1527, 404.1545).

In this case, Dr. Tabino opined that Plaintiff's "post traumatic stress disorder" and "adjustment disorder with depressed mood" met the criteria set forth in paragraphs A and B

of Listing 12.02 (organic mental disorders).[9]  Specifically, Dr.

---

[9] Listing 12.02 provides in pertinent part:

12.02  Organic  Mental  Disorders:
Psychological  or  behavioral  abnormalities
associated with a dysfunction of the brain.
History  and  physical  examination  or
laboratory tests demonstrate the presence of
a  specific  organic  factor  judged  to  be
etiologically related to the abnormal mental
state  and  loss  of  previously  acquired
functional abilities.  The required level of
severity for these disorders is met when the
requirements in both A and B are satisfied,
or when the requirements in C are satisfied.

A.  Demonstration  of  a  loss  of  specific
cognitive abilities or affective changes and
the  medically  documented  persistence  of  at
least one of the following:
    1. Disorientation to time and place; or
    2. Memory impairment, either short-term
    (inability  to  learn  new  information),
    intermediate,  or  long-term  (inability
    to  remember  information  that  was  known
    sometime in the past); or
    3. Perceptual  or  thinking  disturbances
    (e.g., hallucinations, delusions); or
    4. Change in personality; or
    5. Disturbance in mood; or
    6. Emotional  lability  (e.g.,  explosive
    temper  outbursts,  sudden  crying,  etc.)
    and impairment in impulse control; or
    7.  Loss  of  measured  intellectual
    ability of at least 15 I.Q. points from
    premorbid  levels  or  overall  impairment
    index  clearly  within  the  severely
    impaired  range  on  neuropsychological
    testing,  e.g.,  the  Luria-Nebraska,
    Halstead-Reitan, etc.;

AND

B.  Resulting  in  at  least  two  of  the
following:

Tabino opined that Plaintiff demonstrated the loss of specific cognitive abilities or affective changes and the medically documented persistence of three of the seven paragraph A criteria factors, those being, memory impairment, disturbance in mood, and emotional lability. (Tr. at 1058). In addition, Dr. Tabino opined that Plaintiff demonstrated three of the four paragraph B criteria, those being, marked difficulties in maintaining social functioning, deficiencies of concentration, persistence, or pace, and repeated episodes of deterioration or decompensation. (Id.).

In his decision, the ALJ considered Listings 12.04 (affective disorders) and 12.06 (anxiety related disorders), which contain the same paragraph B criteria found in Listing 12.02. The ALJ found no record evidence to support Dr. Tabino's opinions that Plaintiff satisfies the paragraph B criteria of these Listings.[10] The Court has extensively reviewed the record

---

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration; . . . .

20 C.F.R. § 404, app. 1.

[10] The ALJ also found that Plaintiff failed to satisfy the paragraph C criteria of Listings 12.04 and 12.06 because Plaintiff failed to establish repeated episodes of

and agrees with the ALJ that Dr. Tabino's August 2010 opinions are unsupported by any evidence in the record, including Dr. Tabino's own treatment records. The Court finds, as the ALJ found, that Dr. Tabino's treatment records do not reflect marked restrictions in social functioning or marked difficulties in maintaining concentration, persistence, or pace, nor do they show episodes of decompensation.

To the contrary, as the ALJ found, Dr. Tabino's treatment records show that Plaintiff's GAF scores were related more to stress over losing her job, loss of her unemployment benefits, and her niece's death than any psychological impairment. (Id. at 753, 995-96, 998). Dr. Tabino's records further reflect that Plaintiff was unemployed by choice, not because she was disabled, and that it was her unemployment, not disability, that motivated her to apply for disability benefits.[11] (Id. at 429, 535-36, 559, 995, 1070). Moreover, as the ALJ found, Dr. Tabino's practice of downgrading Plaintiff's GAF scores [12] is

decompensation, propensity toward decompensation, or need for a highly supportive living arrangement. (Tr. 38).

[11] As the ALJ found, Plaintiff reported to Dr. Tabino that she had applied for disability benefits because "currently she [was] not working." (Tr. 48, 996).

[12] GAF (Global Assessment of Functioning) is a numeric scale (0 through 100) used by mental health clinicians that measures a patient's overall level of psychological, social, and occupational functioning on a hypothetical continuum. A GAF score of 41-50 indicates serious symptoms (e.g., suicidal

inconsistent with her contemporaneous observations of significant improvement in Plaintiff's symptoms.[13] (Id. at 429-30, 581-82; 878-79). Dr. Tabino's opinions are also inconsistent with the other record evidence, namely, the depression screenings conducted at the veteran's facility in March 2009, April 2009, April 2010, and December 2010, all of which were "negative . . . for depression." (Id. at 540, 580-81, 941, 1032). Dr. Tabino's opinions are also inconsistent with Plaintiff's own testimony in which she describes her mental limitations in the workplace as consisting of noise "get[ting] on [her] nerves" and a desire to work alone.[14] (Id. at 73). This is a far cry from Dr. Tabino's assessment that Plaintiff is

---

ideation, severe obsessional rituals, frequent shoplifting) or serious social dysfunction (e.g., no friends, unable to keep a job). A GAF score of 51-60 suggests moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). A GAF score of 61-70 is indicative of mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. See http://www.gafscore.com.

[13] Despite Plaintiff's reports to the contrary, Dr. Tabino herself noted in March 2008 that Plaintiff "is not depressed." (Tr. 600).

[14] In her initial applications, Plaintiff did not even mention mental impairment; rather, she based her applications solely on back problems, right lung problems, knee problems, and right hand problems. (Tr. 198).

completely disabled as a result of her psychological impairments. All of this evidence undermines Dr. Tabino's opinion that Plaintiff is unable to work due to her mental impairments. Because Dr. Tabino's opinions in the August 2010 "Proof of Disability" and "Mental Impairment Questionnaire" forms are inconsistent with her own treatment notes, as well as the remaining record evidence, they were properly discredited by the ALJ and assigned little weight.

The undersigned further finds that the ALJ's RFC assessment is based on substantial record evidence. Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's residual functional capacity are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his impairments, and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the Plaintiff's residual functional capacity, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274

(11th Cir. 1985).  Plaintiff has failed to meet her burden in
this case.

As noted, Plaintiff contends that because the ALJ rejected
the opinions of Dr. Tabino, her treating physician, there is no
medical evidence in the record to support the ALJ's RFC
assessment.  The undersigned notes, however, that while the ALJ
rejected the opinions expressed by Dr. Tabino in the "Proof of
Disability" and "Mental Impairment Questionnaire" forms, he
relied heavily on Dr. Tabino's treatment records in determining
Plaintiff's RFC, and in ultimately concluding that Plaintiff is
not disabled.

The RFC can be supported by substantial evidence
notwithstanding the fact that the ALJ found good cause for
rejecting an opinion from the claimant's treating physician
regarding her functional capacity.  Green v. Soc. Sec. Admin.,
223 Fed. Appx. 915, 923 (11th Cir. 2007) (unpublished));
Saunders, 2012 U.S. Dist. LEXIS 39571 at *10, 2012 WL 997222 at
*4 ("[T]he Eleventh Circuit has not set out a rule indicating
that an RFC must be based on the assessment of a treating or
examining physician in every case.").  In Green, the Eleventh
Circuit affirmed the district court's finding that the ALJ's RFC
assessment was supported by substantial evidence, even in the
absence of an RFC assessment by a treating or examining medical
source, where the ALJ had good cause to discredit the treating

physician's opinion and had formulated the plaintiff's RFC based on the treatment records and the plaintiff's testimony. <u>Green</u>, 223 Fed. Appx. at 922-24. The court held, "[a]lthough a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ." <u>Id.</u>, 223 Fed. Appx. at 923 (citing 20 CFR §§ 404.1513, 404.1527, 404.1545); <u>see also</u> <u>Packer v. Astrue</u>, 2013 U.S. Dist. LEXIS 20580, *7, 2013 WL 593497, *2 (S.D. Ala. February 14, 2013) (the fact that no treating or examining medical source submitted a physical capacities evaluation "does not, in and of itself, mean that there is no medical evidence, much less no 'substantial evidence,' to support the ALJ's decision.").

There is no question in this case that the ALJ considered all the evidence of record and took into account Plaintiff's treatment records, the observations of medical sources concerning the severity of Plaintiff's limitations caused by her mental impairments, the credible opinions provided by medical sources about what Plaintiff still can do,[15] the reports provided

_____

[15] The ALJ's RFC is also supported by the opinions of State Agency psychologist, Dr. Joanna Koulianos, Ph.D., set forth in the July 2, 2010, Psychiatric Review Technique and Mental RFC Assessment. (Tr. at 767, 771). As the ALJ found, Dr. Koulianos opined that Plaintiff's post traumatic stress disorder and adjustment disorder with depressed mood have resulted in a

to the Agency by Plaintiff, and the Plaintiff's testimony. (Tr. 34-56). The ALJ copiously evaluated all of the foregoing evidence in reaching his determination that Plaintiff retains the residual functional capacity to perform a range of sedentary work, with the conditions and restrictions set forth above, which fully account for the limitations caused by Plaintiff's mental impairments. (Id.). Thus, the undersigned concludes

---

"mild" restriction in Plaintiff's activities of daily living, a "moderate" degree of limitation in maintaining social functioning and maintaining concentration, persistence, or pace, and no episodes of decompensation. (Id. at 767). Dr. Koulianos further opined that Plaintiff either is not significantly limited or only moderately limited in all functional areas as a result of her psychological impairments. (Id. at 771-72). An ALJ is "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)). With the exception of Dr. Tabino's discredited opinions in the "Proof of Disability" and "Mental Impairment Questionnaire" forms, Dr. Koulianos' opinions did not conflict with the credible opinions of any examining sources. Thus, the ALJ properly afforded Dr. Koulianos' opinions the greatest weight. See Forrester, 455 Fed. Appx. at 902 ("the ALJ did not err by crediting the opinions of non-treating sources over those of the treating physician. . . . The ALJ must give the treating physician's opinion 'substantial or considerable weight *unless good cause is shown to the contrary*,' which happened here.") (emphasis in original); see also Lee ex rel. B.G.S. v. Colvin, 2013 U.S. Dist. LEXIS 34558, *37, 2013 WL 1007708, *11 (S.D. Ala. 2013) (unpublished) ("an ALJ may rely upon and credit the opinions of non-treating sources over those of a treating physician if the evidence supports the opinions of the non-treating sources but not the opinions of the treating physician")).

that Plaintiff's assignment of error is without merit.

Based upon a careful review of the record in this case and for the reasons set forth above, the Court finds that the ALJ's RFC assessment is supported by substantial evidence. Therefore, Plaintiff's claim is without merit.

**V.    Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED.**

**DONE** this **31st** day of **July, 2014.**

/s/  SONJA F. BIVINS
**UNITED STATES MAGISTRATE JUDGE**